IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **JOHNSON COUNTY SURGERY CENTER, L.P.**<br>One Park Plaza<br>Nashville, TN 37203<br><br>　　　　　Plaintiff,<br><br>　　　　　v.<br><br>**STACO ELECTRIC CONSTRUCTION COMPANY**<br>11030 Hickman Mills Drive<br>Kansas City, MO 64134<br><br>　　and<br><br>**EXCEL CONSTRUCTORS, INC.**<br>8041 W. 47th Street<br>Overland Park, KS 66203<br><br>　　and<br><br>**CENTRAL POWER SYSTEMS & SERVICES, LLC**<br>9200 Liberty Drive<br>Liberty, MO 64068<br><br>　　　　　Defendants. | CIVIL ACTION<br><br>Docket No.: |

## COMPLAINT – CIVIL ACTION

COMES NOW Plaintiff, Johnson County Surgery Center, L.P., and for its causes of action against the Defendants Staco Electric Construction Company, Excel Constructors, Inc. and Central Power Systems & Services, LLC hereby alleges and states as follows:

1

## PARTIES

1. Plaintiff, Johnson County Surgery Center, L.P. (hereinafter "JCSC" or "Plaintiff") is a corporation organized and existing under the laws of the State of Tennessee with its principal place of business located at One Park Plaza, Nashville, TN 37203.

2. Defendant, Staco Electric Construction Company (hereinafter "Staco"), is a corporation organized and existing under the laws of the State of Missouri with a principal place of business located at 11030 Hickman Mills Drive, Kansas City, MO 64134.

3. Defendant, Excel Constructors, Inc. (hereinafter "Excel"), is a corporation organized and existing under the laws of the State of Kansas with a principal place of business located at 8041 W. 47th Street, Overland Park, KS 66203.

4. Defendant, Central Power Systems & Services, LLC. (hereinafter "Central Power") is a limited liability company organized and existing under the laws of the State of Delaware with a principal place of business located at 9200 Liberty Drive, Liberty, MO 64068.

5. Upon information and belief, the members of Defendant Central Power's Limited Liability Company are residents of the State of Delaware. Central Power may be served with the Summons and Complaint by serving its resident agent The Prentice-Hall Corporation System, Kansas, Inc. 1100 SW Wanamaker Road, Suite 103, Topeka, KS 66604.

## JURISDICTION AND VENUE

6. Jurisdiction is proper in the District of Kansas pursuant to 28 U.S.C. § 1332(a)(3) because the amount in controversy exceeds $75,000 and the parties are citizens of different states.

7. Jurisdiction is further proper within the District of Kansas as Defendants routinely and systematically conduct business within the State of Kansas so as to purposefully avail themselves to the jurisdiction of the District of Kansas.

8. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) as the events giving rise to the instant claim occurred within the District of Kansas, specifically at a medical facility known as Surgicenter of Johnson County located at 8740 Nieman Road, Overland Park, KS 66214.

## GENERAL ALLEGATIONS

9. At all times material hereto, Plaintiff was the lessee of a surgical suite located within the Surgicenter of Johnson County located at 8740 Nieman Road, Overland Park, KS 66214 (hereinafter the "Property").

10. At all times herein relevant, the Surgicenter of Johnson County was owned by SCJC Partners Properties, LLC (hereinafter "SCJC").

11. Upon information and belief, on or about July 11, 2022, Defendant Excel contracted with SCJC to act as the general contractor for the construction of the Surgicenter of Johnson County (hereinafter the "Project").

12. Upon information and belief, the construction contract between SCJC and Defendant Excel for the Project required Excel to establish electrical connection of the Surgicenter of Johnson County to a local primary power source, and the installation of a permanent back-up electrical power source in the form of a gas-powered electric generator as required by local building codes.

13. Upon information and belief, work on the Project continued through the end of 2023.

14. Upon information and belief, prior to December 29, 2023, it was determined that the permanent gas-powered electrical generator required by the contract for the Project would not be delivered in a timely manner.

15. Upon information and belief, in an attempt to maintain the schedule for the Project, Defendant Excel requested that its electrical subcontractor, FSG Electric (hereinafter "FSG"), install a temporary gas-powered electrical generator that would later be replaced with a permanent one.

16. Upon information and belief, FSG was unable to obtain a temporary electrical generator in a timely manner.

17. Upon information and belief, as a result of FSG's inability to timely obtain a temporary electrical generator, Defendant Excel contacted Defendant Staco, an electrical contractor, to ask if it could provide a temporary electrical generator.

18. Upon information and belief, Defendant Staco agreed to furnish a temporary electrical generator for the Project.

19. Upon information and belief, the contract for the Project between SCJC and Defendant Excel required delivery of electrical power to the Surgicenter of Johnson County at 208 volts as that was the amount of voltage the facility was designed to receive.

20. The contract for the Project between SCJC and Defendant Excel required Defendant Excel to furnish a low voltage Automatic Transfer Switch (hereinafter "ATS").

21. Upon information and belief, FSG contracted with Central Power to furnish and install the ATS System on the Project.

22. Upon information and belief, the ATS System is a self-activating switch governed by certain internal control logic to ensure continuous delivery of electric power to the Project from either the local utility or a backup temporary generator.

23. Upon information and belief, the control logic, or automatic controller is microprocessor based and constantly monitors electrical parameters, including the amperage and

voltage from both the primary source from the utility and the alternate source of power from the generator.

24. When the primary electrical power source is either interrupted or fails, the ATS automatically transfers the load circuit in the Project building to the alternative generator source whether temporary or permanent.

25. Upon information and belief, a temporary electrical generator was delivered to the Project by Staco and installed by FSG on October 13, 2023.

26. Upon information and belief, the temporary electrical generator failed to operate properly during a test conducted sometime in mid-December 2023.

27. Upon information and belief, the ATS system sensed that power from the utility company had been interrupted during the test and sent a signal to the first alternate generator to start up and generate power. The generator started and sent 208 volts through the ATS system indicating that the generator voltage was set and produced a 208-volt current to the Project.

28. Upon information and belief, the generator failed to start up within the time parameters required by the local electrical code.

29. Upon information and belief, as a result of the failed test, SCJC requested that a different temporary electrical generator be delivered to the Project to be installed and tested.

30. Upon information and belief, a different temporary electrical generator was delivered to the Project by Defendant Staco on or about December 29, 2023 (hereinafter the "Generator").

31. Upon information and belief, Defendant Excel requested that Defendant Staco install and test the Generator to ensure that it met all applicable codes.

32. Plaintiff began occupying its space within the Property on or about December 29, 2023.

33. Upon information and belief, the Generator could be set to deliver electrical power at 208 volts or 480 volts.

34. Upon information and belief, an electrician from Staco connected the Generator with it being set to deliver 480 volts of electricity which exceeded the amount of voltage the facility was designed for.

35. Upon information and belief, the Staco electrician failed to ensure that the voltage on the Generator was set to 208 volts before connecting it to the facility.

36. When the temporary electrical generator was activated by the electrician from Staco, the excess voltage caused an electrical power surge to occur in the Surgicenter of Johnson County which caused significant damage to the Property and the contents therein (hereinafter the "Incident").

37. The Incident was caused by the negligence, carelessness and/or recklessness of Defendants.

38. As a result of the Incident, Plaintiff sustained substantial damages to the Property and the contents there in the amount of $754,929.63.

## COUNT I – NEGLIGENCE
## PLAINTIFF v. DEFENDANT STACO ELECTRIC CONSTRUCTION COMPANY

39. Plaintiff hereby incorporates the previous paragraphs of this Complaint as if fully set forth herein at length.

40. Defendant Staco had a duty to exercise reasonable care in the work performed at the Project, and to ensure the work was performed in a good and workmanlike manner that did not create a risk of damage to the Property and in accordance with all local, state and federal laws,

rules, regulations and codes, industry standards and codes, as well as in accordance with all relevant plans and specifications.

41. Defendant Staco, through the acts and omissions of its agents, servants, workmen, contractors and/or employees, breached its duty of care in an improper, unreasonable, negligent, and careless manner, both generally and specifically as follows by:

  a. Failing to exercise reasonable care when installing, testing and/or running the Generator;

  b. Failing to ensure that the Generator was set to deliver the proper voltage before installing, testing and/or running it;

  c. Failing to properly observe safety protocols when installing, testing and/or running the Generator;

  d. Failing to take proper and adequate precautions to protect Plaintiff and the Property when installing, testing and/or running the Generator;

  e. Failing to implement and follow regulations and reasonably prudent practices to avoid and electrical power surge when installing, testing and/or running the Generator;

  f. Failing to properly monitor, supervise, and/or oversee its agents, servants, workmen, contractors and/or employees to ensure the exercise of reasonable care when installing, testing and/or running the Generator;

  g. Failing to comply with all local, state, and federal laws, statutes, ordinances, rules, regulations, and/or codes when installing, testing and/or running the Generator;

    h.    Failing to properly monitor, supervise, and/or oversee its agents, servants, workmen, contractors and/or employees to ensure compliance with all local, state, and federal laws, statutes, ordinances, rules, regulations, and/or codes when installing, testing and/or running the Generator;

    i.    Failing to comply with all acceptable industry standards and codes when installing, testing and/or running the Generator;

    j.    Permitting the installation, testing and/or running of the Generator in a manner which an electrical power surge at the Property;

    k.    Taking inadequate measures to prevent the Generator from causing an electrical power surge at the Property;

    l.    Failing to act reasonably under all of the circumstances; and

    m.    Such other acts or omissions that will be revealed during discovery.

42.    As a direct, proximate, and foreseeable result of the negligence of Defendant Staco, as described above, the Incident occurred causing significant damages to the Property and its contents therein resulting in Plaintiff incurring damages in the amount of $754,929.63.

WHEREFORE, Plaintiffs pray for judgment against Defendant, Staco Electric Construction Company, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00) that would fairly and reasonably compensate Plaintiff for its damages plus costs.

## COUNT II – NEGLIGENCE
## PLANTIFF v. DEFENDANT EXCEL CONSTRUCTORS, INC.

43.    Plaintiff hereby incorporates the previous paragraphs of this Complaint as if fully set forth herein at length.

44.    Defendant Excel had a duty to exercise reasonable care in the work performed at the Project, and to ensure the work was performed in a good and workmanlike manner that did

not create a risk of damage to the Property and in accordance with all local, state and federal laws, rules, regulations and codes, industry standards and codes, as well as in accordance with all relevant plans and specifications.

45. Defendant Excel, through the acts and omissions of its agents, servants, workmen, contractors and/or employees, breached its duty of care in an improper, unreasonable, negligent, and careless manner, both generally and specifically as follows by:

a. Failing to exercise reasonable care in the supervision and/or inspection of the work at the Project performed by its employees, agents, servants, workmen and/or subcontractors;

b. Failing to adequately oversee and/or supervise the installation, testing or running of the Generator by Defendant Staco;

c. Failing to ensure that the Generator was set to deliver the property voltage before it was installed, tested or ran by Defendant Staco.

d. Failing to hire competent or qualified employees, agents, servants, workmen and/or subcontractors to install, test and/or run the Generator;

e. Failing to ensure that Defendant Staco was competent and qualified to install, test and/or run the Generator;

f. Failing to ensure that the Generator was installed, tested and/or ran in a manner that did not pose a foreseeable risk of harm to persons or property;

g. Failing to ensure that its employees, agents, servants, workmen and/or subcontractors complied with any and all industry-wide standards and/or trade practices;

    h.  Failing to perform its work so as not to create a foreseeable risk of harm to persons or property;

    i.  Permitting a defective and dangerous condition to exist that created an unreasonable risk of harm to the Property, of which Defendant knew or in the exercise of reasonable care, should have known;

    j.  Negligently, carelessly and/or improperly permitting the improper installation, testing and/or running of the Generator, thereby creating an unreasonable risk of harm to the Property;

    k.  Failing to ensure that its employees, agents, servants, workmen and/or subcontractors properly installed, tested and/or ran the Generator;

    l.  Permitting the installation, testing and/or running of the Generator in a manner which an electrical power surge at the Property;

    m.  Taking inadequate measures to prevent the Generator from causing an electrical power surge at the Property;

    n.  Failing to act reasonably under all of the circumstances; and

    o.  Such other acts or omissions that will be revealed during discovery.

46.    As a direct, proximate, and foreseeable result of the negligence of Defendant Excel, as described above, the Incident occurred causing significant damages to the Property and its contents therein resulting in Plaintiff incurring damages in the amount of $754,929.63.

WHEREFORE, Plaintiff prays for judgment against Defendant, Excel Constructors, Inc., in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00) that would fairly and reasonably compensate Plaintiff for its damages plus costs.

## COUNT III – NEGLIGENCE
## PLANTIFF v. DEFENDANT CENTRAL POWER SYSTEMS & SERVICES, LLC

47. Plaintiff hereby incorporates the previous paragraphs of this Complaint as if fully set forth herein at length.

48. Defendant Central Power had a duty to exercise reasonable care in the work performed at the Project, and to ensure the work was performed in a good and workmanlike manner that did not create a risk of damage to the Property and in accordance with all local, state and federal laws, rules, regulations and codes, industry standards and codes, as well as in accordance with all relevant plans and specifications.

49. Defendant Central Power had a duty to exercise reasonable care to properly install, program and commission the ATS system and ensure that its protective systems would function properly to prevent equipment damage.

50. In a related case before this Court entitled *Excel Constructors, Inc. v. Staco Electric Construction Company and Central Power Systems & Services, LLC*, Docket No.2:25-cv-02284-TC-TJJ, Defendant, Staco has asserted Central power was negligent and at fault for the Incident by failing to properly program the ATS system, install the ATS system with disabled overvoltage protection features, failing to properly commission and program the ATS system, failing to ensure that the protective systems would function properly to prevent equipment damage and failing to complete the contracted ATS programming services.

51. As a direct, proximate, and foreseeable result of the negligence of Defendant Central Power, as described above, the Incident occurred causing significant damages to the Property and its contents therein resulting in Plaintiff incurring damages in the amount of $754,929.63.

11

WHEREFORE, Plaintiff prays for judgment against Defendant, Central Power Systems & Services, LLC, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00) that would fairly and reasonably compensate Plaintiff for its damages plus costs.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

By: /s/ Court T. Kennedy
 Court T. Kennedy KS # 22067
 Gates Shields Ferguson Hammond PA
 10990 Quivira; Suite 200
 Overland Park, KS 66210-1284
 Telephone: (913) 661-0222
 Facsimile: (913) 491-6398
 ckennedy@gatesshields.com

**ATTORNEY FOR PLAINTIFF**